UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JULIE DORSEY, | ) | |
| | ) | Case No.  1:20-cv-2774 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| LOWE'S HOME CENTERS, LLC, | ) | |
| *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

Before the Court is Defendant Lowe's Home Centers, LLC's motion for summary

judgment.  (Doc. No. 19.)  For the reasons stated herein, Lowe's' motion is GRANTED.

I. **Background**

A. **Facts**

From the pleadings and evidence on file, the Court finds that the following facts are

undisputed, unless otherwise stated.

On November 26, 2018, Julie Dorsey was shopping at a Lowe's store in Bedford Heights,

Ohio.  (Doc. No. 18-1[1] at PageID# 84, 87.)  Dorsey's two young children were shopping with

her.  (*Id.*)  The store was appropriately lit, and she noticed nothing out of the ordinary.  (*Id.* at

PageID# 87.)  Dorsey intended to purchase tile for a pet enclosure at her home.  (*Id.*)

An accident and injury occurred, however, which is recounted below.  The following

three photographs were taken shortly after that accident:

---

[1] Both parties submitted excerpts of Dorsey's deposition to their briefs.  For consistency, the
Court cites to the full deposition filed as Doc. No. 18-1.

 



(Doc. No. 19 at PageID# 141-42 & 144 n.1; Doc. No. 20-3; Doc. No. 18 at PageID# 88.)  These photos were taken by Dorsey's husband, who came to the store to pick her up.  Dorsey and Lowe's both included these photos as exhibits with their summary judgment papers.  (*See id.*)[2]

Dorsey identified the square tile, sized eighteen inches by eighteen inches (18" x 18"). (Doc. No. 18-1 at PageID# 87, 92.)  The tiles came from the manufacturer to Lowe's in prepackaged boxes[3] that each held eight (8) tiles.  (*See id.*; *see also* Doc. No. 18-2 at PageID# 129 (describing the filled, arranged pallets that Lowe's received from manufacturers).) According to Dorsey (from her review of the product specs), each complete box of tiles weighed approximately seventy pounds (70 lbs.).  (Doc. No. 18-1 at PageID# 91-92; *see also id.* at PageID# 93 (noting that a Lowe's employee filled out an incident report including the SKU number for the tiles).)  The two boxes of tile laying face down directly on the floor in front of the pallet together weighed "roughly 140 pounds," according to Dorsey.  (*See id.*)

The photos show that the prepackaged tile boxes on the pallet were bound together in sets of two.  Two tight plastic bands are visible encircling the exterior of each pair of boxes.  The two

---

[2] Ohio courts review and rely on photographs submitted in similar manner and circumstances when ruling on summary judgment motions regarding premises liability, negligence, or an open and obvious hazard.  *See, e.g.*, *Butler v. TriHealth, Inc.*, 2022-Ohio-4354, 2022 WL 17481578, at *1-2 (Ohio Ct. App. Dec. 7, 2022); *Hupp v. Meijer Stores Ltd. P'ships*, 2006-Ohio-2051, 2006 WL 1085667, at *3 (Ohio Ct. App. Apr. 25, 2006).  Federal courts do likewise.  *E.g.*, *Spencer v. DTE Electric Co*., 718 F. App'x 376, 377 (6th Cir. 2017); *Bodrie v. Speedway LLC*, No. 18-12344, 2019 WL 7584398, at *2 (E.D. Mich. Oct. 30, 2019).

[3] Both parties here referred to the cardboard that encased the tiles as "boxes."  The Court is aware that vendors and retailers might instead refer to those cardboard encasements as "cartons" or "packaging."  *E.g.*, *City Of Middleburg Heights v. Feltes*, 2003-Ohio-3248, 2003 WL 21419607, at *1 (Ohio Ct. App. June 19, 2003); *Corley v. Big Bear Stores Co., Inc*, No. 84-AP-779, 1984 WL 6061, at *3 (Ohio Ct. App. Dec. 31, 1984).  To be clear, the Court's use of "boxes" is solely to conform to the verbiage used in briefs and depositions in the record.  No inference should be drawn from that word use regarding thickness or strength of cardboard encasing these tiles – a subject on which no evidence was submitted by either side.

boxes on the floor – *i.e.*, the two that Dorsey says landed on her foot – appear to be banded together like the others.

As shown in the photos, boxes of tile were arranged atop a wooden pallet.  That pallet sat directly on the store's floor.  (Doc. No. 18-1 at PageID# 89; Doc. No. 20-3.)  To either side on the floor were other wood pallets holding other products.  (*See* Doc. No. 20-3.)  Erected above this bottom row of floor pallets were metal shelves holding products.  (*Id.*)

As to the pallet that Dorsey approached, the photos confirm that all tile outer boxes directly atop that pallet were upright, or "standing" on the thin end of each box.  (Doc. No. 20-3 at PageID# 240.)  Those boxes stood arranged in two different directions.  (*Id.*)  From the perspective of a customer in the aisle, the boxes on the left side of the pallet were arranged like books on a library shelf.  (*Id.*)  On the right side of the pallet, the boxes were arranged facing out, like magazines on a newsstand.  (*Id.*)  The orientation of boxes on the right enabled a customer to see the actual tile exposed through an open segment in each box.  (*Id.*)

Dorsey testified that she saw one box of tile that had already been opened laying atop these arranged "standing" boxes.  This opened box laid atop the arranged boxes on the right side of the pallet.  (Doc. No. 18-1 at PageID# 88.)  This open box lay flat like a placemat – *i.e.*, on top of and perpendicular to the standing boxes.  (*Id.* at PageID# 88.)  Dorsey confirmed that the opened box rested atop boxes on *the right* side of the pallet.  (*Id.*)  In other words, the opened box was on top of boxes facing outward toward the aisle (*i.e.*, positioned like magazines).

Dorsey wanted to buy six tiles, so she intended to take those individually – rather than take home a complete prepacked box.  (*Id.* at PageID# 87.)  Dorsey thus did not remove any of the tile boxes "standing" on the wood pallet.  Instead, she reached for the opened box.  Notably, that was the only opened tile box Dorsey recalled seeing.  (*Id.* at PageID# 91.)

4

Dorsey testified that she did not try to pull individual tiles from this flat-sitting, opened box.  (*Id.* at PageID# 89.)  Instead, she tried to retrieve the entire already-opened box of tiles that sat atop the right-side boxes.  (*Id.* at PageID# 88-90.)  Dorsey recounted:

Q: Did you remove, the box that was stacked on top, did you remove only tiles from that box or did you remove the box entirely?

A: I removed the box entirely.

Q: And you would have been standing what, directly in front of this pallet right where basically the tiles on the floor are located?

A: Correct.

Q: Were there any -- was anything obstructing your view of this pallet or the tiles before you picked up the box?

A: No.

Q: Were you able to see that the -- were you able to see the vertically stacked boxes of tile before you removed the one on top?

A: Yes.

Q: Had you ever picked out tiles at a Lowe's store or any other type of home renovation store before?

A: Not to the best of my knowledge, no.

Q: When you removed the box that was stacked on top, did you shift the vertically stacked boxes?

A: No.

Q: And how do you know that?

A: I was being very careful not to break them, so I was paying close attention to how I was picking them up.

Q: And what was the time -- between the time you picked up the box and the tiles fell, how much time elapsed?

A: It was immediate. I still had the tiles in my hand.

Q: Okay.  So you pick up the box off the top and then the other two boxes immediately fall, correct?

A: Yes. Correct.

(*Id.* at PageID# 89.)

Before she tried to retrieve the pre-opened box, Dorsey admitted that she did not inspect

the standing boxes beneath it or check their stability.  (*Id.* at PageID# 90.)  Nonetheless, she

surmised afterward how she believed the accident occurred:

> A: When I removed the box off of the top of that stack, it was apparent -- it was
> evident to me that that box was, in fact, holding those boxes up.  They were not
> fully -- after seeing it after the fact, they were not on the pallet completely.  They
> were hanging off of the edge where it was broken.  And when that box was removed
> off the top of them, it allowed them to tip over.
>
> Q: Okay.  And what is it that you are indicating holding the boxes in place?  The
> weight of the box of tiles?
>
> A: The weight of the box of tiles that was on top of them.

(*Id.*)  The place where the two toppled boxes are shown face down on the floor in the photos

above was very similar to where those boxes were positioned when they landed on her foot,

Dorsey confirmed.  (*Id.* at PageID# 89.)

With regard to the outer slat of the pallet closest to the aisle (and customers), Dorsey

acknowledged that the pallet slat edge *was* visible on the left (where boxes were stacked like a

bookshelf) and was *not* visible on the right (where boxes faced outward like a magazine stand).

(*Id.* at PageID# 90.)

> Q: Okay. And so you weren't able to see any portion of the pallet in front of the
> boxes when they were stacked on the right side; is that correct?
>
> A: Correct.
>
> Q: Did you at any -- did you have any reservations based upon what you were able
> to observe that lifting off those tiles off the top of those boxes could cause the tiles
> to shift and fall in any way?
>
> A: No.

(*Id.* at PageID# 90.)   Dorsey acknowledged that she has no evidence that Lowe's had prior knowledge of this pallet's condition or any instability in the tiles arranged upon it.  (*Id.* at PageID# 90-91.)

After the boxes fell, Dorsey alerted her oldest child to summon a Lowe's employee to assist her in moving the boxes so she could release her foot.  (*Id.* at PageID# 92-93.)  A Lowe's employee came to assist Dorsey, and shortly thereafter a Lowe's manager named Allison Rickon arrived and took information from Dorsey.  (*Id.*)  Rickon prepared an incident report.  (*Id.*)  The report described how the incident occurred as follows: "Was looking at tile – removed a few boxes and a couple fell off the pallet."  (*Id.* at PageID# 112.)

After speaking with Rickon (who gave her an ice pack), Dorsey walked out of the store.  (*Id.* at PageID# 94.)  Rickon then went to the spot where the incident occurred and did not recall seeing anything unusual.  (Doc. No. 18-2 at PageID# 125.)

## B.  Procedural History

On November 25, 2020, Dorsey filed this negligence action in the Cuyahoga County Court of Common Pleas against Lowe's Home Centers, LLC, Lowe's Home Centers, LLC Store No. 1023, Lowe's Home Centers, LLC Store. No. 1023 *d/b/a* Lowe's of Bedford Heights (collectively "Lowe's")[4], and Eric-Store Manager-Last Name Unknown Lowe's of Bedford Heights Store No. 1023 ("Eric").  (Doc. No. 1-1 at PageID# 6.)  Defendant Lowe's Home Centers, LLC timely removed the action to this Court on December 16, 2020.  (*See* Doc. No. 1.)  Plaintiff moved to remand this action because Defendant Eric, presumably a citizen of Ohio, destroyed diversity jurisdiction.  (Doc. No. 7.)  On January 13, 2021, the Court determined that it

---

[4] Lowe's stated that it was "improperly identified in the Complaint as 'Lowe's Home Centers, LLC Store No. 1023' and 'Lowe's Home Centers, LLC Store No. 1023 *d/b/a* Lowe's of Bedford Heights."  (Doc. No. 19 at PageID# 138.)

had diversity jurisdiction over this action because Defendant Eric was fraudulently joined.  (Doc. No. 10 (Nugent, J. presiding).)

Lowe's moved for summary judgment on June 1, 2022.  (Doc. No. 19).  Plaintiff opposed on June 15, 2022 (Doc. No. 20), and Lowe's replied on June 29, 2022 (Doc. No. 21).

## II.  <u>Law and Analysis</u>

Dorsey sued Lowe's on a negligence theory and further claimed that Lowe's was liable under the doctrine of *respondeat superior*.  As to each, Lowe's is entitled to judgment as a matter of law.

### A.  Standard of Review

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."  Fed. R. Civ. P. 56(a). "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of showing that no genuine issues of material fact exist."  *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (citations and quotations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Mining Mach., Inc. v. Copley*, 145 F. App'x 149, 152 (6th Cir. 2005) ("The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact.").

> A "material" fact is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party.

*Abu-Joudeh v. Schneider*, 954 F.3d 842, 849-50 (6th Cir. 2020) (additional citations and quotations omitted).

"Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Queen v. City of Bowling Green, Kentucky*, 956 F.3d 893, 898 (6th Cir. 2020) (quotation and citations omitted).  "[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Id.*; *see also Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005).

A party asserting (or disputing) a fact must cite evidence in the record or show that the record establishes the absence (or the presence) of a genuine dispute.  *See* Fed. R. Civ. P. 56(c) and (e).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

 "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, the Court's role is not to make credibility determinations or 'weigh' conflicting evidence.  *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014); *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir. 2003).  "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Payne*, 767 F.3d at 530.

## B.  Negligence

For Count One, Dorsey's burden is to show that (i) Lowe's owed her a duty of care, (ii) Lowe's breached that duty, and (iii) said breach proximately caused her injury.  *Lang v. Holly*

*Mill Hotel, Inc.*, 909 N.E.2d 120, 122-23 (Ohio 2009); *Armstrong v. Best Buy Co., Inc.*, 788 N.E.2d 1088, 1090 (Ohio 2003). "The failure to prove any one of these elements is fatal to a claim of negligence." *Rieger v. Giant Eagle, Inc.*, 138 N.E.3d 1121, 1125 (Ohio 2019).

"Where the doctrine of *res ipsa loquitur* is not involved,[5] negligence is never presumed from the mere fact of an accident and resulting injury . . . . [Instead,] specific acts or omissions indicating failure on the part of the defendant to exercise due care must be alleged as the direct and proximate cause of the injury, and the burden is upon the plaintiff to prove the same." *Wise v. Timmons*, 592 N.E.2d 840, 842 (Ohio 1992) (quoting *St. Marys Gas Co. v. Brodbeck*, 151 N.E. 323 (Ohio 1926)). "In an action based on negligence, the presumption exists that each party was in the exercise of ordinary care, and such presumption prevails until rebutted by evidence to the contrary." *Id.* (citing *Biery v. Penn. R. Co.,* 99 N.E.2d 895, 897 (Ohio 1951)).

"Therefore, the plaintiff must show how and why any injury occurred so as to develop facts from which it can be determined by a jury that the defendant failed to exercise due care and that such failure was a proximate cause of the injury." *Adkins v. Chief Supermarket*, 2007-Ohio-772, 2007 WL 567441, at *2 (Ohio Ct. App. Feb. 26, 2007) (quotations and citations omitted). "[W]here liability depends upon the carelessness or fault of a person or his employees, the right of recovery must be based on competent evidence." *Boles v. Montgomery Ward & Co.*, 92 N.E.2d 9, 13 (Ohio 1950). As the Sixth Circuit recently remarked, "a probative inference for submission to a jury can never arise from guess, speculation or wishful thinking.'" *Hutchison v.*

---

[5] Dorsey correctly did not invoke *res ipsa loquitur*. That rule of evidence was unavailable because the tile boxes at issue were not within Lowe's' exclusive control. "[A] defendant does not have exclusive control over a display of merchandise where members of the public frequent an area and have access to the display." *Ray v. Wal-Mart Stores, Inc*., 993 N.E.2d 808, 826-27 (Ohio Ct. App. 2013); *see also Sherlock v. Strouss-Hirshberg Co*., 4 N.E.2d 912, 915-16 (Ohio 1936) ("We call it a rule of evidence – and so it is. It must remain a rule of evidence, and by no stretch of the imagination should it be expanded into a rule of liability.").

*Lowes Home Ctrs., LLC*, 21-4048, 2022 WL 1773720, at *3 (6th Cir. June 1, 2022) (quoting *Parras v. Standard Oil Co*., 116 N.E.2d 300, 319 (Ohio 1953)).

For the reasons discussed below, the Court concludes that Lowe's is entitled to judgment as a matter of law on Count One because there is no genuine dispute of fact as to negligence element one (duty) or negligence element two (breach).

### 1. Duty Owed

"[T]he existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability. . . . [T]he determination of the existence of a duty is a question of law based upon the facts of the case." *Occhipinti v. Bed Bath & Beyond, Inc*., 2011-Ohio-2588, 2011 WL 2119914, at *3 (Ohio Ct. App. May 27, 2011) (quotation and citations omitted); *see also Person-Thomas v. Quilliams-Noble Apartments, L.L.C.*, 45 N.E.3d 654, 656 (Ohio Ct. App. 2015). "Business invitees are persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner." *Light v. Ohio Univ.*, 502 N.E.2d 611, 613 (Ohio 1986). A putative customer like Dorsey is deemed a business invitee. *See Hansen v. Wal-Mart Stores, Inc*., 2008-Ohio-2477, 2008 WL 2152000, at *3 (Ohio Ct. App. May 20, 2008).

> A shopkeeper owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger. A shopkeeper is not, however, an insurer of the customer's safety. Further, a shopkeeper is under no duty to protect business invitees from dangers which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them.

*Paschal v. Rite Aid Pharm., Inc*., 480 N.E.2d 474, 475 (Ohio 1985) (quotation and citations omitted); *see also Hutchinson*, 2022 WL 1773720, at *1.

### a) Open and Obvious Doctrine

"A shopkeeper ordinarily . . . has the duty to warn its invitees of *latent or hidden* dangers.

11

When applicable, however, the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." *Armstrong*, 788 N.E.2d at 1089-90 (emphasis added). "By focusing on the duty prong of negligence, the rule properly considers the nature of the dangerous condition itself . . . [and whether] the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Id.* at 1091. "The rationale behind the doctrine is that the open and obvious nature of the hazard itself serves as a warning.  Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.*, 597 N.E.2d 504, 506 (Ohio 1992).

"In most situations, whether a danger is open and obvious presents a question of law." *Aycock v. Sandy Valley Church of God*, 2008-Ohio-105, 2008 WL 115829, at *4 (Ohio Ct. App. Jan. 8, 2008); *see also McLaughlin v. Andy's Coin Laundries, LLC*, 2018-Ohio-1798, 112 N.E.3d 57, 61 (Ohio Ct. App. 2018) ("Typically, whether a danger is open and obvious is a question of law."); *Uhl v. Thomas*, 2009-Ohio-196, 2009 WL 119844, at *3 (Ohio Ct. App. Jan. 20, 2009) ("Whether a hazard is an open and obvious condition is a matter of law to be determined by the court, and therefore, a suitable basis for summary judgment." (quoting *Galinari v. Koop*, 2007-Ohio-4540, 2007 WL 2482673 (Ohio Ct. App. Sept. 4 2007)).  Courts will decide, as a matter of law, whether a hazard is open and obvious if only one conclusion can be drawn from established facts.  *See, e.g.*, *Asher v. Glenway Real Estate, LLC*, 149 N.E.3d 1035, 1039 (Ohio Ct. App. 2019); *Nageotte v. Cafaro Co.*, 828 N.E.2d 683, 690 (Ohio App. 2005).

A court uses an objective standard to determine whether a danger is open and obvious, and the fact that a particular plaintiff herself is not aware of the hazard is not dispositive of the

issue.  *Williams v. Strand Theatre & Cultural Arts Ass'n., Inc.*, 2019-Ohio-95, 2019 WL 193654,

at *3 (Ohio Ct. App. Jan. 14, 2019).  "[T]he determinative question is whether the condition is

*discoverable* or *discernible* by one who is acting with ordinary care under the circumstances.  A

dangerous condition does not necessarily need to be observed by the injured party, it just

objectively needs to be observable."  *Uhl*, 2009 WL 119844, at *3 n.1 (emphasis in original)

(quotations and citations omitted).[6]  "A risk is considered open and obvious when its dangers are

within the body of knowledge common to the community and generally known and recognized

by the ordinary consumer."  *Doe v. SexSearch.com*, 551 F.3d 412, 420 (6th Cir. 2008)

(quotations and citations omitted); *see also Gawloski v. Miller Brewing Co.*, 644 N.E.2d 731,

733 (Ohio Ct. App. 1994).

Ohio courts review photographs in the record from which they may conclude whether a

hazard was open and obvious.  *E.g.*, *Tarpley v. Aldi Inc.*, 2013-Ohio-624, 2013 WL 683529, at

*2-3 (Ohio Ct. App. Feb. 22, 2013); *Hupp*, 2006 WL 1085667, at *3.

> Certain clearly ascertainable hazards or defects may be deemed open and obvious
> as a matter of law for purposes of granting summary judgment. . . . [T]he existence
> and obviousness of an alleged danger requires a review of the underlying facts.
> However, unless the record reveals a genuine issue of material fact as to whether
> the danger was free from obstruction and readily appreciable by an ordinary person,
> it is appropriate to find that the hazard is open and obvious as a matter of law.

*Ruz-Zurita v. Wu's Dynasty, Inc.*, 2008-Ohio-300, 2008 WL 224354, at *3 (Ohio Ct. App. Jan.

29, 2008) (citations omitted).  "[W]here the hazard is not hidden from view or concealed and is

discoverable by ordinary inspection, the court may properly sustain a summary judgment against

the claimant."  *Parsons*, 566 N.E.2d at 700.

---

[6] In *Parsons v. Lawson Co.*, for example, a customer tripped over boxes in a shopping aisle,
which he did not notice.  566 N.E.2d 698, 699-701 (Ohio Ct. App. 1989).  The court affirmed
summary judgment for the storeowner because "reasonable minds could not conclude other than
that the boxes were neither latent nor hidden from view nor nondiscoverable by ordinary
inspection.  They were in plain view and discernible."  *Id.* at 701.

"[T]he owner . . . may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.  Thus, when a plaintiff is injured by an open and obvious danger, summary judgment is generally appropriate because the duty of care necessary to establish negligence does not exist as a matter of law."  *Lang*, 909 N.E.2d at 123.

### b)      Falling Retail Merchandise

Courts in Ohio often hear cases where a retail customer attempted to retrieve merchandise and adjacent items fell onto that customer.  Trial and appellate judges in state and federal courts regularly conclude, as a matter of Ohio law, that this sort of risk was open and obvious.  This Court recounts a few of those decisions below.

Perhaps the most analogous to the dispute at hand is *McGee v. Lowe's Home Ctrs*., 2007-Ohio-4981, 2007 WL 2758668 (Ohio Ct. App. Sept. 21, 2007), excerpted below.

> [T]he condition in question would be the arrangement of the pre-cut vinyl sheet flooring placed on display.  There are multiple pictures of the display in the record.  Basically, these pictures show that there were varying lengths of pre-cut vinyl sheet flooring placed vertically on a shelf with only a bar to hold them up.  It is clear from the pictures that the shorter lengths of pre-cut vinyl sheet flooring were just reaching the top of the bar and if moved a few inches to either side, it would be easy for them to fall off of the display.  Thus, the precarious arrangement of the pre-cut vinyl sheet flooring was neither latent nor hidden.  Any reasonable shopper should have appreciated the risk associated with removing merchandise from the display given the nature of its location and the arrangement of the pre-cut vinyl sheet flooring.

> Granted, no shopper particularly expects or desires to have a display come tumbling down on them while shopping in a store.  However, in a warehouse self-help environment, there always remains a possibility that too much fumbling around through merchandise can create an unstable situation where items may become loose or shift positions.  That is precisely what appears to have happened in this case.  Because it was apparent from observing the display that manipulating some of the pre-cut vinyl sheet flooring could cause some of the shorter flooring to fall out of the display, it constituted an open and obvious danger relieving Lowe's from the duty to warn its invitees.

*Id*. at *3-4.

14

A similar conclusion was reached in *Hupp v. Meijer Stores Ltd. P'ships*, where a customer removed an area rug from a shelf, which shook the shelves and sent another rug falling down in the customer's direction.  2006 WL 1085667, at *1.

> [Plaintiff] testified that she did not observe anything regarding the display of the rugs that made her think the display was unsafe or dangerous.  We believe otherwise based upon our review of the photographs contained in the record.  Instead, we find a reasonable person would have appreciated the danger inherent in removing merchandise from the display shelf.  Thus, [plaintiff] should have been aware of the danger and should have taken steps to avoid the danger.  Accordingly, we conclude that the danger associated with removing merchandise from the rug display shelf constituted an open and obvious danger relieving [the store] from the duty to warn its invitees.

*Id.* at *3.

In cases where a customer retrieved merchandise from stacked boxes or stacked crates, the courts have reached a similar conclusion.  In *Lazzara v. Marc Glassman, Inc.*, the plaintiff saw many cardboard boxes stacked so high that they went up nearly to the store ceiling.  667 N.E.2d 1275, 1276 (Ohio Ct. App. 1995).  Each box contained multiple, individually wrapped packages of toilet tissue.  *Id.*  One or a few of the boxes at eye level had a portion of the aisle-facing cardboard cut out, so that customers could reach in and take a package.  *Id.*  The plaintiff claimed that she pulled one wrapped pack out from an open box – trying to be careful not to have the package touching or dragging against the top of the cardboard box.  Nonetheless, other stacked boxes came tumbling down from above.  *See id.*  The court held that the danger from the stacked boxes was open and obvious – *i.e.*, the danger that stacked boxes above might inadvertently be shaken or unsteadied, causing those to tip over and fall down.  *Id.* at 1277.

In *Sexton v. Wal-Mart Stores, Inc.*, a shopper reached up and grabbed two boxes of detergent from a top shelf.  1999 WL 22632, at *1 (Ohio Ct. App. Jan. 14 1999).  When she pulled those, two other boxes fell from the same shelf and hit her on the head.  *Id.*  The plaintiff contended that the falling boxes indicated that boxes on that top shelf must have been improperly

stacked by the store.  *Id.*  The store argued that even if the boxes had been improperly stacked, the hazard of pulling down stacked merchandise from a top shelf was open and obvious.  *Id.* at *4.  The court concluded that the hazard of reaching onto a top shelf to gather merchandise is open and obvious.  *Id.* at *5.  The danger here was obvious, so the store had no duty to warn invitees of it.  *Id.*  Moreover, it was incumbent upon a reasonable shopper to take steps to avoid the danger or ask for assistance from store personnel, rather than trying to retrieve merchandise in the face of an inherent, obvious hazard.  *Id.*

This rule of law also applied to merchandise that is below eye level.  In *Bonner v. Glassman*, a customer approached three stacks of water cases.  2012-Ohio-86, 2012 WL 112664, at *1 (Ohio Ct. App. Jan. 12, 2012).  Two of the stacks were over six feet high.  *Id.*  The customer grabbed hold of a water case from the lower stack.  *Id.*  Nonetheless, water cases from the adjacent taller stack fell and hit him.  *Id.*  In applying the open and obvious doctrine, the court noted that the customer had seen and realized the way the water cases were stacked.  *Id.* at *4.  "Disturbing heavy cases that were stacked 'so high' constituted an obvious danger.  Bonner's action apparently was enough to destabilize the entire display."  *Id.* at *4.

Risks also may be open and obvious where a customer reaches downward to pull items located lower to the ground.  In *Frajt v. Goodwill Indus. of Greater Cleveland*, for example, a customer entered a goodwill store in search of a men's belt.  514 N.E.2d 719 (Ohio Ct. App. May 5, 1986).  Directly beneath the sales rack was a cardboard box of tangled, donated belts.  *Id.* at 720.  This unsorted box was left unattended while the stockperson who had been hanging them was called away.  *Id.*  The customer saw an elastic belt she liked and leaned over to pulled it out.  *Id.*  Tangled amidst others, this belt initially stretched and then its buckle end flung loose and hit the customer's eye.  *Id.* at 719-20.

The court in *Frajt* held that the customer's "injury was not the result of the position of the box, or anything inherently dangerous about its contents.  Instead, the injury resulted from [her] attempt to pull one particular stretch belt out of the box," which presented "a recognizable danger."  *Id.* at 720.  The court held that the store had no duty to warn regarding common sense matters, such as the snap-back recoil potential for an elastic belt or the risk of grabbing for merchandise not arranged by store personnel.  *See id.*

### c) Application to this Case

This case falls squarely within the body of case law described above.  When retail customers are hit by items adjacent to or touching what the customer moved or grabbed, Ohio courts apply the open and obvious doctrine.  Dorsey testified that she pulled the open tile box carefully, but so too did the plaintiff in *Lazarra*.  Dorsey was able to look and see the items she was reaching for, like the plaintiffs in *Bonner* and *Frajt*.  The direction the tile boxes on the right side fell was precisely the direction a customer could see was the only direction that those could tip, *i.e.*, forward into the aisle.  So the movement and injuring force here was within common knowledge and experience, as in *Frajt.*  The upshot of these decisions is that when a retail customer reaches for an item that is shelved or stacked adjacent to other merchandise, there is an obvious danger that other items may tip and fall.

Dorsey was shopping in a warehouse self-help environment.  *McGee* indicated that there is always a risk that pulling an item stacked or leaning against other products may result in a product becoming unsteady or falling.  That is what happened here, and Dorsey did not dispute that she could see that the opened box she removed was resting directly against and atop the right-side standing boxes.  (Doc. No. 18-1 at PageID# 88.)

From the Ohio decisions above, it follows as a matter of law that there was an open and obvious danger that if a customer removed the opened tile box, the standing boxes it rested upon

could inadvertently dislodge and fall.

### d)  Plaintiff's Case Law

Dorsey argued that instead of the decisions above this Court instead should look to *Lopez*

*v. Home Depot, USA, Inc.*, 2003-Ohio-2132, 2003 WL 1962360 (Ohio Ct. App. Apr. 25, 2003).

It suffices to quote *Lopez* to confirm that the Court's analysis above is correct.

> In *Sexton* and *Lazzara*, the injured party was the person removing items from the shelves and the person who caused the merchandise to fall on top of them.  This is not the situation in the present case.  Mr. Lopez, not Mrs. Lopez, was the individual reaching into the stacks.  Mrs. Lopez was merely standing on the floor next to the stacks.  Additionally, in viewing the facts in a light most favorable to the non-movants, we note that the wood Mr. Lopez was examining was not in contact with the third shelf or any of the wood that fell.  This is different than the situations in *Sexton* and *Lazzara* because, in those cases, the objects which the plaintiffs were removing from the shelves were in contact with the objects that fell on top of them.  Given the factual distinctions, we find that *Sexton* and *Lazzara* are distinguishable on the facts and, therefore, inapplicable to this case.

*Id.* at *2.

While it is true that *Lopez* held that a trial was necessary to address material fact disputes,

some of those bear no relation to this case (*e.g.*, whether Lopez's husband or the store was the

cause of Mrs. Lopez's injury).  *Id.*  The excerpt above, by contrast, is directly pertinent to this

case.  Dorsey herself moved the opened box, which was in contact with the boxes that fell.

*Lopez* confirms that the open and obvious rule applies in such circumstance and would bar the

imposition of a legal duty – at least as to the opened tile box and stacked tile boxes touching it.

That said, Dorsey draws the Court's attention to another aspect of *Lopez*.

> It is undisputed that it is Home Depot's policy that wood placed on shelves three through five must be banded together.  In this instance, the wood on the third shelf was not banded.  . . . Mr. Lopez . . . stood on a few planks of wood located in the first shelf of the adjacent row.  While he was examining a piece of wood on the second shelf of the first row, he heard his wife scream when a number of pieces of wood fell on her from the third shelf of the first row.  The wood that fell on Mrs. Lopez was positioned approximately eight to nine feet off the floor.

*Id.* at *1.

18

Dorsey derived from this un-banded wood issue the suggested legal rule that "improperly supported merchandise and merchandise stacked in a manner that violates store policy . . . [can] refute arguments of open and obvious."  (Doc. No. 20 at PageID# 216.)  She misread *Lopez*, however.  The failure to band in violation of a store rule went to the creation of a hazard and to proximate cause.  *Lopez* did *not* hold that the absence of banding rendered the open and obvious doctrine inapplicable.  Indeed, that would have made little sense because the boards at issue were on a shelf "approximately eight to nine feet off the floor."  *Id.* at *1.  *Lopez* did not suggest customers should (or even could) see banding on that high shelf.

Instead, the court recited two reasons why there was no open and obvious risk apparent to Mrs. Lopez.  First, she did not grab for adjacent merchandise or cause shelves to shake, so she was not expected to anticipate items dislodging or falling.  Second, she was looking in the direction of a lower shelf, which gave her no reason to be on the lookout upward or to anticipate items falling from nine feet above.  These facts are in applicable here, where the evidence is clear that Dorsey grabbed tile from the display in question and was looking directly where the merchandise ultimately fell.  That the display may have violated Lowe's policy does not render the open and obvious doctrine inapplicable, and *Lopez* did not hold otherwise.

Dorsey also urged the Court to follow *Kemper v. Builder's Square, Inc.*, 671 N.E.2d 1104 (Ohio Ct. App. 1996).  The case is inapposite for three reasons.  First, the customer "testified that she was only looking at the display and *did not touch anything* on the shelving unit when several of the shorter turned posts fell off the upper shelf, striking the back of her head, her chest, and left leg."  *Id.* at 1105 (emphasis added).  Second, "the fact that the failure to employ any restraints was a proximate cause of Ms. Kemper's injury is not in dispute."  *Id.* at 1107.  Third, the court focused on "the failure to employ *any* restraining device to prevent the vertically

stacked posts from toppling forward." *Id.* (emphasis added).  Unlike *Kemper*, Dorsey touched and pulled items directly touching those that fell.  The stacked tile boxes here were banded into sets of two, so the front tile box (which Dorsey suggests must have extended over the pallet slat) had the banded weight of a second box behind it.  So Dorsey cannot say there was *no* banding as in *Lopez* or *Kemper*.

Finally, Dorsey relied on *Dillon-Garcia v. Marc Glassman, Inc.*, 2006-Ohio-562, 2006 WL 302349, (Ohio Ct. App. Feb. 9, 2006).  There a customer reaching for a can from a display was hit by another can from that display.  *Id.* at *1.  Crucially in that case, another customer saw a store employee stack the cans in the display just before the plaintiff came to it, so there was no question that the display stack and any hazard was created by the store.  *Id.*  The court held that the open and obvious determination would not be decided as a matter of law because the following issue of fact was disputed: "whether one could anticipate a stray can falling, on its own, from another part of the stack when appellant *had successfully removed a can without affecting any of the cans in contact with it.*"  *Id.* at *3 (emphasis added).  *Dillon-Garcia* is inapposite because here Dorsey admitted she moved merchandise touching directly that which fell on her.

### e)     Facts and Evidence

To confirm why the open and obvious rule applies, the Court reviews (1) what Dorsey initially saw and reached for, (2) what consequence injured her, and (3) what she saw and surmised afterward.

### (1)     Opened Box of Tiles

Seeing an opened box of heavy tile laying irregularly from the others presented an open risk.  This presented an obvious possibility that items directly underneath might have been jostled or left unsteady.

The different condition and placement of the opened product here would catch the eye – which seems *more* distinct, open, and obvious than what the shoppers saw in the other falling merchandise decisions.  In those cases, customers reached for a product, and the courts imputed to them just the basic understanding that (a) similar product was stocked or stacked adjacent, (b) retrieving an item can possibly tip, shake, or dislodge surrounding items, and (c) merchandise may fall.  That sufficed for the Ohio courts to conclude as a matter of law that the hazards were obvious, so no duty arose on the part of the shopkeeper.  In none of those cases (except *Frajt*) did the plaintiff see obvious irregularity – *i.e.*, where one item was unlike and askew from all the others.  Nor did those plaintiffs choose to reach for and move an item that plainly appeared out of kilter from directly adjacent items.

That leads to a related question.  Was the risk that tiles on the right side might fall forward into aisle open and obvious?

### (2)      Tile Boxes Falling Forward

For two reasons, the Court concludes as a matter of law that the risk tiles on the right side of the pallet could fall forward into the aisle was open and obvious.

First, the photographs in the record allow the Court to see that tile boxes on the right side were arranged face out – akin to a magazine stand.  For those boxes, forward into the aisle appears to be the only direction they could tip.  Notably the boxes on the left side of the pallet did not present that same risk because those were arranged like books on a library shelf.  Given this openly visible difference, it would have been obvious that standing in front of the right side of the pallet put one in reach of a tile box falling forward from this pallet.

Second, in her brief, Dorsey acknowledged such obviousness:

> Pertinent facts that are not in dispute include the following . . . That the merchandise
> that fell on top of Mrs. Dorsey's foot was stacked vertically on end and in a manner

that it faced the aisle so if it would tip over and fall, it would likely fall forward into the aisle where customers walk and stand.

(Doc. No. 20 at PageID# 209.)

She finally maintains that the merchandise was stacked on the pallet in a manner in which it is reasonably foreseeable that, should it become unstable, it would fall forward into the aisle and potentially onto store patrons. This creates an unreasonable risk of injury to business invitees when there are safer alternatives, such as those deployed by Home Depot, which stacks its tile vertically but perpendicular to the aisle.

(*Id.* at PageID# 210.)  "This goes directly to the heart of Plaintiff's claim that it was reasonably foreseeable that even the way the merchandise was stacked on the pallet was dangerous . . . ."

(*Id.* at PageID# 212.)

Because the direction the boxes were arranged was readily apparent to Dorsey, and because she conceded that the potential falling direction was self-evident, the risk that tile boxes on the right could fall forward was open and obvious.  On this record, a jury could not conclude otherwise.  As a matter of law, then, Lowe's did not have a duty to warn Dorsey of the hazard that tile boxes on the right side of the pallet could fall forward into the aisle.  That risk was open and obvious.  In addition, as previously discussed, Lowe's did not have a duty to warn Dorsey that if she moved boxes stacked atop one another, other boxes in the stack could tip and fall. That risk is obvious as a matter of law.

### (3)  Splintered Wood Slat

Though the opened and arranged tile boxes posed open, obvious risks, Dorsey claimed that there was another danger underneath.  She argued that the right-side boxes extended over the outermost wood slat of the pallet (closest to the aisle).  "[T]he front-most slat supporting the merchandise was missing a strip of wood approximately one-to-two inches wide and running the full length of the wooden pallet."  (Doc. No. 20 at PageID# 208.)  The reduced width of the slat "posed an elevated risk of material falling from it."  (*Id*. at PageID# 204.)  "Mrs. Dorsey

22

maintains that this missing strip of wood from the pallet allowed the merchandise stacked vertically on the pallet to overhang the edge of the pallet." (*Id.* at 208.)

> Merchandise was stacked on top of it in a manner that obstructed Mrs. Dorsey's view of the broken nature of said pallet. . . . It was only after the fact that Mrs. Dorsey had any notice that there existed a far more dangerous condition, a condition stemming from the combination of the boxes of tiles overhanging the broken edge of wooden pallet therefore concealing it, than the normal risk that a reasonably prudent person could be expected to know and appreciate stemming from merchandise simply stacked on a shelf or pallet alone.

(Doc. No. 20 at PageID# 214-15.)

A concealed condition would not be in the open. Obstructed view sounds like a question for a jury. And broken displays might be dangerous. But having carefully examined Dorsey's evidence, it does not show a genuine fact dispute that is material. And Ohio law does not support Dorsey's position. Below the Court lists several reasons why Dorsey's negligence claim fails under the first element.[7]

### (a)  Identifying the Purported Hazard

Dorsey's brief repeatedly referred to a "broken pallet," and framed the legal issues as if predicated on that fact.[8] To begin, Dorsey submitted no evidence regarding the pallet as a whole; her material addressed nothing other than the outer slat.

-----

[7] Even assuming Lowe's did have a duty stemming from the pallet slat or product extending over its edge, the next section of this opinion explains why Dorsey has not shown an actionable breach to satisfy the second element.

[8] Calling it a "broken pallet" misstates the condition of the pallet as a whole. In fact, Dorsey submitted photos showing the pallet in question holding up around 560 pounds of product just after the accident (*i.e.*, eight visible boxes using Dorsey's explanation that two boxes weighed around 140 pounds). That means just before the accident, taking Dorsey's account as true, the pallet was holding up over 700 pounds of product. The proper focus here is that outer slat. That is the only aspect on which Dorsey submitted evidence or analysis. So at best Dorsey could have asserted that the outer slat was broken, but this was not a situation where the outer slat snapped, buckled, or came apart from the pallet base. The photos taken after the accident show that the outer slat was still nailed to the base and was still supporting product (*i.e.*, on the left side).

But regardless of verbiage – broken, splintered, missing a piece or shard – Dorsey's evidence and argument went to one condition or feature of the pallet: the width of its outer slat. Again, her theory was that "a broken pallet was still used to display merchandise.  In doing so the merchandise extended over the edge of the broken pallet[.]"  (*Id.* at 214.)  In other words, Dorsey's position was that the right-side boxes extended beyond the outer slat, and she surmised that this was due to the slat's broken-off missing edge.  But she could not see the right side of the outer slat and thus did not know the slat was broken (*i.e.*, missing an edge).  The fact remains, however, that the pallet was holding weight and the pallet's splinter was most pronounced on the left side.

With the purported hidden, dangerous condition at issue clarified, the Court next considers (i) whether the record evidence supports Dorsey's assertions or demonstrates a genuine, material fact dispute and (ii) whether Dorsey's theory is tenable under Ohio law.

### (b)  Right-Side Boxes Extending Beyond Pallet

Dorsey presented no evidence showing that the right-side boxes did extend beyond the pallet.  She did not testify that she saw such a thing *ex ante*.  No witnesses claimed to have seen any such thing.  And the splintered slat was pronounced on the left side of the pallet, and Plaintiff pulled from the right.  There is no indication that the splinter on the left side related to falling items.  Further, she presented no measurements of the boxes or pallet to substantiate her speculation in that regard.

So the existence of the alleged dangerous condition here is not something any witness perceived.  Instead, "*after the fact she came to understand* the boxes were overhanging the edge of the pallet[.]"  (*Id*. at 213 (emphasis added).)  Notably, even when she lifted the opened box of tile, she does not claim to have had a view showing the display extended beyond the pallet.

What Dorsey considered to be "evident" and "apparent," she admitted that this belief came

"seeing it after the fact, they were not on the pallet completely."  (Doc. 18-1 at PageID# 90.)

After the fact, the two tile boxes in question were on her foot and the floor.  Dorsey did

not actually *see* if those had jutted out past the pallet slate before her accident.  So the existence

of the purported hazardous condition here (boxes jutting out off of the pallet's outer slat) is not

based on what Dorsey saw *ante*, but rather on what she assumed or hypothesized post-accident.

However, Ohio law does not permit hindsight speculation to stand in for evidence of

what a witness or party actually saw firsthand.  As a matter of law, a plaintiff cannot simply

presume or speculate that a hazardous condition must have existed given that the accident and

injury occurred.  *See Lacy v. Wal Mart Stores*, 2012-Ohio-1690, 2012 WL 1307075, at *1-2 &*7

(Ohio Ct. App. 2012); *Hansen*, 2008 WL 2152000, at *6-7; *Hupp*, 2006 WL 1085667, at *3; *cf.*

*Hutchison*, 2022 WL 1773720, at *2.

Dorsey may not rely on tile boxes sticking out past the pallet slat's edge as the (or a)

dangerous condition here.  She did not submit evidence from which a jury could conclude that

any "overhang" (as Dorsey called it) even existed – much less make a finding that this presented

an unreasonable, actionable danger.

Because the evidence would not allow a finding that this condition existed or was

dangerous, there was no actionable legal duty to warn of or to rectify this supposed danger.  To

the extent Dorsey's negligence claim was predicated on the assertion that the tile boxes stuck out

past the pallet's edge prior to her accident, that claim (or that portion of her claim) fails to satisfy

the first element.  Dorsey did not put forward evidence from which she could meet her burden to

prove this particular hazard (or this particular aspect of the hazard).

Moreover, as discussed elsewhere in this opinion, even if there had been some tile box

"overhang" on the right side, as Dorsey believed, that would not constitute a latent unreasonable danger to customers.  The risks that the pallet's outer slat was not wide enough or was splintered or broken each were open and obvious.  The photos in the record confirm that those problems or risks were visible – *i.e.*, from the portion of the outer slat that was clearly visible all along the left side of that slat.

### (c)  Dependence on the Tile Box Open Hazard

Dorsey admitted that the danger of the boxes extending over the pallet depended on the opened box on top.  The weight of the latter was holding the boxes extended beyond the edge of the display in place, she believed.  (Doc. No. 18-1 at PageID# 90.)  As discussed, under Ohio law it was open and obvious that upon pulling one item of merchandise, those touching it could be unsteadied and fall.  *See, e.g.*, *McGee*, 2007 WL 2758668, at *4.

Even if one were to assume that the outer slat of the pallet presented some latent danger, in this case such a hazard could be triggered and cause harm only where the customer elected to forego the open and obvious hazard from the tile boxes above.  Here, the item hitting Dorsey was not one that a customer could not foresee.  What hit Dorsey was precisely what Ohio courts say a reasonable shopper was bound to watch out for: items adjacent to the one a customer moved falling down.  *E.g.*, *Hupp*, 2006 WL 1085667, at *3.  As a matter of law, then, Dorsey may not use the outer slat's "broken" edge to recover for an injury that she sustained by disregarding an open and obvious hazard.

*Tarpley v. Aldi Inc*. is instructive.  2013 WL 683529, at *5.  There, the plaintiff tripped over a metal floor bracket, which was bolted to the ground.  *Id.* at *1.  The court held that the floor bracket – and the risk one could trip over it – were open and obvious.  *Id.* at *4-5.  But the plaintiff argued that there was an additional aspect of the dangerous condition.  A vertical piece

of railing extended from the bracket to a horizontal handrail above. *Id.* at *5. This vertical piece of railing was loose and not connected to the metal bracket. Tarpley argued, and the court agreed, that *this* condition was *not* open and obvious. *Id.* Nonetheless, the court sided with the Aldi store and held that there was no negligence liability.

The court acknowledged that the unstable or not fully connected vertical bar might support a negligence claim based on a different type of accident or injury. *Id.* If a customer reached out to, leaned on, or was struck by the railing or the connecting piece, for example, then the loose bar or unstable connection to the bracket might be the relevant hazard. But what *this* plaintiff touched and tripped over was the floor bracket. So discovery of another latent aspect or feature – even one immediately adjacent to the floor bracket – did not alter the fact that the plaintiff was injured by the hazard in the manner that was open and obvious: a floor bracket, which obviously could cause a person to trip over it. *Id.* at *6-7.

*Tarpley* did not allow the plaintiff to seize upon some latent hazard where the plaintiff was injured by failing to protect herself from an open and obvious risk. Dorsey attempted a similar maneuver here. The risk was open and obvious that the tile boxes here might tip if a customer moved other boxes touching them. The right-side arrangement of boxes made it plain that if they were to fall off the pallet, those would likely fall forward into the aisle. That was precisely what happened and injured Dorsey. Dorsey cannot save her negligence claim from the open and obvious doctrine simply by focusing on another latent hazard.

This point is stronger and more self-evident here than in *Tarpley* for one basic reason: Even if one granted *arguendo* that the pallet slat here was both latent and dangerous, the pallet did not hit or injure Dorsey. On Dorsey's own account, there was no risk from the latent hazard (*i.e.*, the pallet slat) unless she fell prey to the open and obvious hazard (*i.e.*, the arranged tile

boxes and the opened box on top).  For these reasons, the open and obvious rule precludes liability here.

### (d)  The Open and Obvious Display

Even if Plaintiff were correct in her argument, still Dorsey would not prevail.

The Court here will presume the truth of Dorsey's assertion that the right-side boxes extended over the right side of the pallet's outer slat.  Arguably a jury might deduce from the photographs in the record that the two fallen boxes were wider than the remaining space on the right side of the pallet (*i.e.*, to the outer slat's edge).  For reference, below is a portion from Dorsey's photograph.



(Doc. No. 20-3 at PageID# 240 (segment cropped)).

Taking as true that the right-side boxes extended over the pallet, this display was open and obvious.  It is plain and irrefutable from Dorsey's photograph that the outer slat of the pallet was visibly jutting out from below the left-side boxes.  So if one assumes that Dorsey was correct that no outer slat was visible on the right side (due to the nature of the display), that condition was open and obvious.  The outer slat wood would be visible along the bottom on the left until disappearing beneath the outermost right-side box extending over the pallet – according

to Dorsey's version of events.

Further, also from Dorsey's photograph, the Court notes that the boxes on another pallet sitting to the left of plainly appear to be extending over the pallet.  Even assuming such a display to be a hazard, then, this is yet another open indicator at the same spot of the aisle to customers.  It would have alerted reasonable customer to presence of the risk that boxes may extend beyond these floor pallets.

### (e)  The Open and Obvious Breakage

The Court concludes by noting that the feature of the pallet Dorsey referred to as "broken" was itself open and obvious.  Even assuming the splintered edge or missing piece of the outer slat could be described as a dangerous condition, it was not latent.  The Court includes below a segment of Dorsey's photo showing as much.



(Doc. No. 20-3 at PageID# 240 (segment cropped)).

The left side of the outer slat, which was open and not obstructed, shows the breakage.  So what Dorsey called "broken" was not hidden.  The obstructed portion of the outer slat was no different condition or worse.  To the contrary, the right side of the outer slat was wider and was completely around the nails going into the right-side base.  Put simply, even if one were to accept the premise that the outer slat posed a danger, that danger was on the left side.  That side was open for the wood splintering to be seen.  So the risk or condition under the right side was no worse – and is shown by Dorsey's evidence to be in better condition.  The point, though, is

that whatever Dorsey contended to be the hazard of the outer slat, it was in the open and obvious.

### f) Conclusion

For the reasons stated above, there is no genuine dispute as to the material facts and Dorsey failed to establish that Lowe's owed her a duty to warn of a hazardous condition.

## 2. Breach of Duty

Even assuming Lowe's had a duty because the hazard was not obvious, still Lowe's would be entitled to summary judgment. That is because Dorsey's evidence and arguments did not establish an actionable breach.

"To prove a breach of the duty of care in a premises-liability action, the plaintiff must establish either (1) the defendant, through its officers or employees, was responsible for the hazard; (2) the defendant had actual knowledge of the hazard and neglected to promptly remove it or give adequate notice of its presence; or (3) the hazard existed for a sufficient length of time to reasonably justify the inference that the failure to remove it or warn against it was attributable to a lack of ordinary care." *Ball v. New Era Golf BT Inc*., 2022-Ohio-2125, 2022 WL 2236247, at * 3 (Ohio Ct. App. June 21, 2022); *see also Hochstetler v. Menards*, 688 F. App'x 381, 383 (6th Cir. 2017); *Pruitt v. Hayes*, No. 97-CA-14, 1998 WL 106159, at *2 (Ohio App. Mar. 5, 1998); *Johnson v. Wagner Provision Co.*, 49 N.E.2d 925, 928 (Ohio 1943).

### a) Responsibility for the Condition

One way Dorsey could prove a breach would be to show that Lowe's' "agents or officers actively created the faulty condition," *Korengel v. Little Miami Golf Ctr*., 144 N.E.3d 1074, 1086 (Ohio Ct. App. 2019), or that Lowe's, "through its officers or employees, was responsible for the hazard complained of," *Hansen*, 2008 WL 2152000, at *4.

As to the hazard, Dorsey testified that it was her belief and contention that the opened

box of tiles she removed caused two boxes below it to fall.  (Doc. No. 18-1 at PageID# 89-90.)
The opened box was not only touching those other two boxes but also keeping those other two
upright, she maintained.  (*Id*.)  In this situation, even a careful removal of the opened box laying
above sufficed for the two boxes below to fall.  Dorsey's descriptions of what occurred and what
she surmised to be the dangerous condition that she encountered make the opened box of tile
laying on top an inextricable part of the hazard of which she complains.

But here, Dorsey did not point to any evidence indicating that it was store personnel,
rather than another customer, who opened the tile box and left it atop the arranged pallet.  "[A]
defendant does not have exclusive control over a display of merchandise where members of the
public frequent an area and have access to the display."  *Ray v. Wal-Mart Stores, Inc*., 993
N.E.2d 808, 827 (Ohio Ct. App. 2013); *see also Weber v. Menard, Inc*., 3:13-CV-229, 2014 WL
4965940, at *2-3 (S.D. Ohio Oct. 3, 2014); *Hansen*, 2008 WL 2152000, at *8-9.

Dorsey's own conduct and testimony showed that a customer could and might try to
select or remove tiles individually, in lieu of taking an entire prepackaged box.  Dorsey wanted
six tiles; perhaps an earlier customer took only one.  Another customer may have opened the
box, taken a tile, and left the opened box atop the stacked pallet white jostling the arranged boxes
beneath.  With no evidence at all on this point, Dorsey has not shown a basis upon which a jury
could conclude that Lowe's created the hazard she described in her deposition testimony.

Also, to the extent Dorsey tried to argue that Lowe's had actual notice of the narrowed
slat, she has not pointed to evidence that would allow a jury or this Court to infer that Lowe's
created the hazard.  There is no evidence that Lowe's personnel saw this pallet empty, chose it
for use, filled it with merchandise, or arranged the direction of the merchandise boxes atop it.
The only evidence in the record regarding the pallet indicates that the tile manufacturer or

wholesaler assembled and arranged the pallet, which Lowe's received and placed in its customer

aisle.  Dorsey did not articulate a supported theory, and submitted no evidence to show, that

Lowe's caused the splintered wood slat or that the slat splintered after the stacked pallet arrived

at Lowe's.

### b)        Notice of the Hazard

> Where negligence revolves around the existence of a hazard or defect, a duty of
> reasonable care does not arise unless the defendant has notice, either actual or
> constructive, of such hazard or defect.  Notice may be actual or constructive, the
> distinction being the manner in which the notice is obtained rather than the amount
> of information obtained.  Actual notice exists where the information was personally
> communicated to or received by the party.  Constructive notice is that notice which
> the law regards as sufficient to give notice and is regarded as a substitute for actual
> notice.

*Ball*, 2022 WL 2236247, at *4 (quotations and citations omitted).

Evidence as to the length of time the hazard existed is necessary to support an inference

that a defendant had constructive notice.  *Hochstetler*, 688 F. App'x at 383.  "An inference of

negligence does not arise from mere guess, speculation, or wishful thinking, but rather can arise

only upon proof of some fact from which such inference can reasonably be drawn."  *Fernandez*

*v. Walmart Supercenter #3860*, 2022-Ohio-1304, 2022 WL 1166576, at *4 (Ohio Ct. App. Mar.

25, 2022) (quotations and citations omitted).  "Without such evidence, it is impossible to

determine whether a premises owner should have discovered the hazard upon a reasonable

inspection.  Thus, if a plaintiff fails to present evidence showing how long the alleged hazard

existed, then the plaintiff cannot show that the defendant breached the standard of care."

*Hochstetler*, 688 F. App'x at 383 (6th Cir. 2017) (quoting *Ray*, 993 N.E.2d at 824); *see also*

*Combs v. First Nat'l Supermarkets, Inc.*, 663 N.E.2d 669, 671 (Ohio 1995) (for constructive

notice "evidence of how long the hazard existed is mandatory in establishing a duty to exercise

ordinary care").  The Sixth Circuit recently reiterated that only when a danger exists for a

"sufficient length of time" would it justify an inference that failing to warn against it or remove it is attributable to want of ordinary care.  *Hutchison*, 2022 WL 1773720, at *2.

### (1)    Parties' Contentions

Lowe's argued that there is no evidence showing that it had notice of the purported dangerous condition.  (Doc. No. 19 at PageID# 152.)  It urged that Dorsey presented "no evidence that the ceramic tile display was unreasonably dangerous."  (*Id.* at PageID# 155.)  Moreover, Dorsey submitted "no evidence that Lowe's had actual notice of the possibility that the tile boxes could fall onto a customer."  (*Id.*)  Lowe's noted that Dorsey has offered no evidence that any Lowe's employee manipulated the display, thereby failing to demonstrate actual notice.  (*Id.*)  Further, "Dorsey cannot show how long the ceramic tile boxes were in whatever condition they were," thereby failing to satisfy the requirements of constructive notice. (*Id.*)

In response, Dorsey argued that "there exists at the minimum circumstantial evidence that Defendant Lowes [sic] had actual or constructive knowledge of the condition of the pallet." (Doc. No. 20 at PageID# 217-18.)  Dorsey asserted that "the piece of wood broken off of the pallet was nowhere near the location," which leads to the reasonable inference that the pallet broke "sufficiently long enough ago in time to allow employees to clean up the wooden peace, or that it broke in a separate location prior to being moved into the aisle."  (*Id.* at PageID# 218.) Dorsey argued that either would have provided Lowe's with actual or constructive notice.  (*Id.*)

### (2)    Opened Tile Box

Dorsey has not submitted evidence to identify any person at Lowe's with *actual* knowledge of this open box atop the arranged pallet.  That leaves only *constructive* knowledge of the complained of hazard.  But, because there is no evidence as to how long the box laying above

had been left opened and atop the right side of the stacked pallet, summary judgment for Lowe's is warranted.  *See Parras*, 116 N.E.2d at 303 ("A probative inference for submission to a jury can never arise from guess, speculation or wishful thinking."); *cf. Corley v. Wal-Mart Stores East, LP*, 637 F. App'x 210, 212 (6th Cir. 2016) ("notice of a general or continuing condition in one area of the premises does not necessarily support a finding of constructive notice as to another area").

Another customer may have opened a tile box and manipulated the display only minutes before Dorsey.  While that possibility is speculative, so too would be an assumption that the box atop lay there for a longer time.  Without evidence as to that timing, Lowe's as a matter of law is not charged with constructive notice.

Note why it does not suffice merely to know how long ago the underlying pallet had been placed or arranged.  That is because Dorsey described the opened box of tiles as an inextricable part of the hazard and her injury.  The opened box was what drew her eye and was what she moved.  The opened box was what she claimed held other tile boxes upright.  If one accepts Dorsey's hypothesis, then the tile boxes on the right side would not have stood (or extended over the edge) in place without the weight of the opened box on top of those.  So the opened tile box is an essential feature of the hazard of which Dorsey complains, and there is no evidence in the record to indicate how long that open box rested there.

But even if the Court were to focus on some other aspect of the purported danger, Dorsey did not submit evidence of when the alleged hazard was created.

### (3)  Pallet with a Splintered Slat

Dorsey argued that the following are material fact disputes:

whether Defendant should have been aware of the condition of the pallet due [to] circumstantial evidence that suggests that either the pallet arrived to the location in

a broken condition, and therefore said broken condition should have been seen by the forklift operator during inspection of the pallet, or that the pallet broke at the location but a sufficient time had passed to allow store employees to clean up the broken piece of wood, and therefore once again provided the opportunity to discover the dangerous condition . . . .

(Doc. No. 20 at PageID# 212.)

Take Dorsey's first theory that the tiles extended over the edge of the pallet was a dangerous condition. Dorsey offered no evidence that Lowe's knew or should have known that a display of tiles, stacked upon a pallet on the floor, was extended over the edge of the pallet. On the record, Dorsey and her children were the only people who witnessed the display prior to the tiles falling. Dorsey did not see anyone from Lowe's manipulate or position the display in an unstable position. Dorsey cannot point to any deposition testimony of Lowe's to demonstrate that any employee was actually aware of the condition. Instead, her only documentary evidence is photographs taken after the fact, which she argued show that the tiles were extended beyond the edge of the pallet.

Without more, Dorsey resorted to speculation that Lowe's was negligent in stacking the boards, which is insufficient to survive summary judgment. *See Hansen*, 2008 WL 2152000, at *6 (granting summary judgment where speculation that display was stacked unsafely was unsupported by evidence). No reasonable jury could find, based on such limited evidence as her own speculations, that Lowe's had actual notice that the displayed tiles were a dangerous condition. *See Hutchison v. LF, LLC*, No. 3:19-cv-355, 2021 WL 4635821, at *2 (S.D. Ohio Oct. 7, 2021), *aff'd sub nom. Hutchison v. Lowes Home Centers, LLC*, No. 21-4048, 2022 WL 1773720 (6th Cir. June 1, 2022) (summary judgment appropriate where plaintiff speculated defendant had actual knowledge of an unsafe display).

She similarly failed to demonstrate that Lowe's had constructive notice of the nature of the display extending over the edge of the pallet. Dorsey offered no evidence about how long the

display had been in its current state.  This means Dorsey cannot show that Lowe's had constructive notice of an unreasonably dangerous condition because she offered no evidence of how long the tiles were extending over the pallet.  *Id.*

Moving to Dorsey's argument that the tiles placed on a broken pallet were a dangerous condition.  To prevail on this theory, Dorsey must show that Lowe's was aware that a display of tiles was placed upon a broken pallet.  Again, Dorsey provided no evidence of actual knowledge of the broken pallet.  To the contrary, she conceded as much in her deposition.  (Doc. No. 18-1 at PageID# 90-91.)

She cannot prevail on a theory of constructive notice either.  Dorsey again offered no evidence that Lowe's knew that a splinter was missing from the pallet, much less that Lowe's discovered a splinter on the floor and determined where it originated.  Instead, she argued that the splinter should have either been discovered by a forklift operator in accordance with Lowe's' forklift policies or the splinter occurred at the place of the display and a "sufficient amount of time had passed to allow store employees to clean up the broken piece of wood" and discover the dangerous condition.  (Doc. No. 20 at PageID# 212.)  Neither argument is persuasive without any evidentiary support.

Dorsey urged that the splinter was not immediately near the scene of the incident, thereby demonstrating it had been missing for "a sufficient amount of time."  (*Id*.)  She speculated that the splinter could have broken prior to a forklift operator moving the pallet to the floor but offered no evidence in support.  And she speculated that the splinter could have occurred near the display, and a Lowe's employee swept it up without searching where it came from but offered no evidence in support.  "Mere conclusory and unsupported allegations, rooted in speculation, do not meet [the] burden" at summary judgment.  *Bell v. Ohio State Univ.*, 351

36

F.3d 240, 253 (6th Cir. 2003) (citation and quotation omitted).

Even construing the evidence strongly in Dorsey's favor, "reasonable minds could not conclude how long [the pallet was broken] and thus whether the [broken wood] was there long enough to justify an inference that [Lowe's'] failure to remove it or warn its customers was negligent." *Hochstetler v. Menards*, No. 5:15-CV-01496, 2016 WL 4729306, at *5 (N.D. Ohio Sept. 12, 2016), *aff'd,* 688 F. App'x 381 (6th Cir. 2017) (citation omitted); *see also Ray*, 993 N.E.2d 808 (Ohio Ct. App. 2013) ("Appellants . . . offer no specific evidence to show that at least one employee actually did see the hazard. Instead, their assertion that at least one employee *must have* observed the hazard amounts to speculation.") (emphasis supplied); *Sharp v. Andersons, Inc.*, 2006-Ohio-4075, 2006 WL 2259706, *4-7 (Ohio App. Ct. Aug. 8, 2006) (where plaintiff presented no evidence as to where a grape she slipped on came from and had "no idea" as to the length of time the grape had been on the ground before her fall, her argument that the grape must have come from one of three grape purchases made at the checkout where she fell that were documented by point of sale records was pure speculation).

Because Dorsey has not shown that there exists a genuine issue of material fact as to whether Lowe's breached its duty of care, summary judgment must enter in favor of Lowe's.

### C. Respondeat Superior

Although Lowe's moves to dismiss the entirety of Dorsey's complaint, the parties do not spend much, if any, time briefing Dorsey's *respondeat superior* count.

*Respondeat superior* "speaks only to the vicarious liability of an employer; it does not simultaneously create an express cause of action against individual agents and servants of the employer." *Tye v. Beausay*, 156 N.E.3d 331, 352 (Ohio Ct. App. 2020) (citation omitted). A plaintiff is not required to name an employee as a party to the suit in order to prevail on a

*respondeat superior* theory.  *Tisdale v. Toledo Hosp.*, 967 N.E.2d 280, 285 (Ohio Ct. App. 2012).  However, to recover from an employer for the negligence of an employee, the plaintiff must "prove that the employee was negligent and that the employee was acting within the scope of his employment."  *Id.*

Beyond naming "Eric," the store manager, there is no evidence in the record that identifies an individual who was negligent.  Accordingly, to the extent Dorsey sought to hold Lowe's liable for its employee's negligence, that theory fails because there is no evidence that any employee was negligent.

**III.  Conclusion**

For the reasons stated above, Lowe's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Date: March 10, 2023                                BRIDGET MEEHAN BRENNAN
                                                    UNITED STATES DISTRICT JUDGE